<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>Shyron Vernice Bailey, | Case No.:    19-15531-ABA<br><br>Chapter:    7 |
| Shyron Vernice Bailey,<br>         Plaintiff,<br>v.<br>Navient Solutions, LLC,<br>         Defendant. | Adv. No.:    19-1159-ABA<br><br>Judge:    Andrew B. Altenburg, Jr. |

**MEMORANDUM DECISION**

The plaintiff, Shyron Vernice Bailey ("Ms. Bailey"), commenced this adversary proceeding against Navient Solutions, LLC ("Navient") seeking to discharge her student loan debt under section 523(a)(8) of the Bankruptcy Code. After a full trial, and considering the submissions of the parties and evidence presented, the court finds Ms. Bailey, at this time, has not met her burden that she is entitled to an undue hardship discharge of her student loan debt. However, should the circumstances change such that repayment of the debt constitutes an "undue hardship" within the meaning of 11 U.S.C. § 523(a)(8) as interpreted by the Third Circuit in *Pennsylvania Higher Educ. Assistance Agency v. Faish*, 72 F.3d 298 (3d Cir. 1995), through application of the *Brunner* test, Ms. Bailey is free to seek to reopen her case to seek further relief.

**JURISDICTION AND VENUE**

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

Ms. Bailey is a self-represented individual who filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 19, 2019. On April 3, 2019, Ms. Bailey filed an adversary complaint against Navient asserting she was entitled to discharge her student loan debt due to undue hardship. Navient filed an answer to that complaint on May 2, 2019. Ms. Bailey received her Order Discharging Debtor on June 28, 2019, but her discharge did not discharge the debt to Navient, because she admitted the debt is for an educational benefit or educational loan within the parameters of section 523(a)(8) of the Bankruptcy Code. The trial was adjourned from time to time by the parties. Finally, a trial in this matter was held on June 16, 2021, and at the conclusion thereof, the court permitted the parties to submit post-trial briefs and took the matter under advisement. Although provided with the opportunity to do so, the parties did not file post-trial briefs and the time to do so has passed.[1] The matter is now ripe for consideration.

## STATEMENT OF FACTS

On or about March 14, 2006, Ms. Bailey signed a loan application and promissory note as the student borrower[2] on a Tuition Answer Loan from Sallie Mae to fund her expenses associated with her education at The Richard Stockton College of New Jersey. The parties stipulated that the amount borrowed was $33,333.33. (Doc. No. 30).[3] The loan was disbursed on or about March 29, 2006 and payments were to begin on December 28, 2007 and continue for twenty years with a maturity date of November 28, 2027. (Defendant's Exhibit 1). On or about July 21, 2013, Ms. Bailey's loan was sold to Navient (Defendant's Exhibit 3).

Ms. Bailey is a 41-year-old married mother of three children under the age of 18. She owns a home in Sicklerville, New Jersey where she lives with her children, her husband (41 years old), and her mother (61 years old), both of whom she claims as financial dependents.

---

[1] It appears Ms. Bailey untimely filed a post-trial submission on June 30, 2021. Unfortunately, Ms. Bailey attempted to introduce evidence not previously provided at trial and as the record is closed, the court cannot consider same. There is also no proof that the submission was timely or properly served on counsel to Navient. Whether it was timely or not, the court may not consider the submission.

[2] Throughout this case, Ms. Bailey has consistently stated that her grandmother was the "primary" borrower of the loan, presumably for the purpose that it might have an impact on the outcome of the case. However, the documents reveal (Defendant's Exhibit 1, p.6) that in the event of default, both the grandmother and Ms. Bailey were equally liable for the obligation, and that Navient could collect the debt from Ms. Bailey without ever looking to the grandmother. What is more, the Third Circuit has ruled that § 523(a)(8) applies equally to both student borrowers and other guarantors or co-signers of student loans. *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir.1993). So, the grandmother as the "primary" borrower is of no import.

[3] When Ms. Bailey filed her chapter 7 bankruptcy case, she alleged her total debt for the loan with Navient was $67,198.00. At the time of this trial, Navient submitted evidence that the total debt due under the obligation with Navient is currently $81,759.41. (Defendant's Exhibit 2, p. 2).

Ms. Bailey graduated from The Richard Stockton College of New Jersey with a Bachelor of Science in Social Work and earned a Master of Education in School Counseling from Wilmington University. Ms. Bailey is gainfully employed by the New Jersey judiciary where she earns approximately $46,000 annually. She testified that her net income is about $2,540 a month. *See* Trial Recording ("TR") at 10:11:08 a.m. Ms. Bailey also testified that she receives a $200 a month contribution from her mother and $200 a month in child support for her eldest child. She receives no other income.

Ms. Bailey confirmed her finances as follows:

| Source | Income | Citation |
| --- | --- | --- |
| Monthly Net Income[4] | $2,540 | TR at 11:01:08 a.m. |
| Contribution from Mother | 200 | TR at 11:04:23 a.m. |
| Child Support | 200 | TR at 11:04:31 a.m. |
| **TOTAL** | **$2,940** | |

| Source | Expenses | Citation |
| --- | --- | --- |
| Mortgage | $990 | TR at 11:05:16 a.m. |
| Home Maintenance/Repair | 120 | TR at 11:06:40 a.m. |
| Car Payments | 1,152 | TR at 10:14:30 a.m. |
| Phone Bill | 254 | TR at 11:08:23 a.m. |
| Internet and Cable | 210 | TR at 11:08:33 a.m. |
| Utilities (Electric, Gas, Water) | 515 | TR at 11:08:04 a.m. |
| Food and Housekeeping Supplies | 700 | TR at 11:09:56 a.m. |
| Clothing, Laundry, Dry Cleaning | 220 | TR at 11:11:27 a.m. |
| Student Loan Payments[5] | 500 | TR at 12:26:40 p.m. |
| Personal Care Products and Services | 283 | TR at 11:12:30 a.m. |
| Vehicle Insurance | 334 | TR at 11:15:02 a.m. |
| Transportation | 240 | Schedule J, Line 12. |
| Medical and Dental Expenses | 100 | TR at 11:14:45 a.m. |
| Charitable Contributions/Religious Donations | 25 | TR at 11:13:18 a.m. |
| **TOTAL** | **$5,643** | |

Compared to Schedule J to her petition, it appears that Ms. Bailey has cut some expenses, some significantly, but also has increased some expenses. Navient pointed out that while this adversary was pending, Ms. Bailey purchased two vehicles, a 2018 Jeep Cherokee and a 2019 Ford F150. Ms. Bailey testified that these new vehicles were purchased because the vehicles she had

---

[4] Ms. Bailey testified that her gross income is about $3,580 a month, *see* TR 11:02:57 a.m. She also stated that her deductions total approximately $607 per pay period (bi-weekly) *see* TR 11:03:33 a.m.

[5] Debtor testified that prior to filing for bankruptcy, she was making payments of around $500 a month toward her student loan with Navient and her student loans with Federal Loan Servicing. *See* TR at 12:26:40 p.m.

listed on her bankruptcy schedules needed repairs that exceeded the value of keeping those vehicles. Ms. Bailey also testified that at the time that she and her husband purchased these two vehicles, they were both employed and managing their finances.

## DISCUSSION

Prior to trial, both parties stipulated that the loan obligation to Navient—to fund expenses associated with her education—qualifies under 11 U.S.C. § 523(a)(8) as a presumptively non-dischargeable loan.[6] It was further conceded at trial by Ms. Bailey that even though loan was not directly for "tuition" but rather to pay expenses related to her education and in fact, was used for this purpose, it still qualifies as a presumptively nondischargeable loan. Therefore, the only issue that remains is whether the repayment of this loan would impose an undue hardship on Ms. Bailey thereby allowing her to overcome the presumption of nondischargeability and discharging the debt.

Section 523 provides:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8)    unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

11 U.S.C. § 523(a)(8).

As explained to the parties at the commencement of the trial, the Third Circuit has adopted the Second Circuit's *Brunner* test to determine the existence of an "undue hardship" under section 523(a)(8). *Pennsylvania Higher Educ. Assistance Agency v. Faish*, 72 F.3d 298, 300 (3d Cir. 1995). *See Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987). The *Brunner* test sets forth a three-part test for undue hardship whereby the debtor must demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the

---

[6] *See* Joint Stipulation of Undisputed Facts, Doc. No. 30, ¶15, filed on June 7, 2021.

loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. As explained, the debtor bears the burden of establishing each element of the *Brunner* test by a preponderance of the evidence. *In re Brightful*, 267 F.3d 324, 327 (3d Cir. 2001). "***All three elements must be satisfied individually*** before a discharge can be granted[] [and] [i]f one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Faish*, 72 F.3d at 306 (emphasis added); *In re Davis*, 526 B.R. 136, 141 (Bankr. W.D. Pa. 2015) ("If one of the three elements of the test is not met, because the test is written in the conjunctive, the Court's inquiry ends there, and the student loan debt is not dischargeable."). "Equitable concerns or other extraneous factors not contemplated by the *Brunner* framework" may not be used to support a finding of dischargeability. *Faish*, 72 F.3d at 306. The *Brunner* test "safeguards the financial integrity of the student loan program by not permitting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices." *Id.*

As set forth below, based solely on the evidence submitted, Ms. Bailey currently cannot satisfy all three elements required by the *Brunner* test.

### A. Prong 1: Minimal Standard of Living

The first prong of the *Brunner* test requires the debtor to show that "the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. This requires "an examination of the debtor's current financial condition to see if payment of the loans would cause [her] standard of living to fall below that minimally necessary." *Faish*, 72 F.3d at 305 (citing *In re Robinson*, 999 F.2d 1132, 1135 (7th Cir. 1993)). A debtor is not expected to live in "abject poverty" in order to repay a student loan. *Id.* at 305. However, "more than a showing of tight finances" is required. *Id.* at 306.

Ms. Bailey credibly testified, and without challenge, about her household income, child support, and assistance from her mother, and various expenses. Her total income is approximately $2,940 a month while her total expenses are $5,643 a month.

As to the vehicle expense, the court is not swayed by Navient's suggestion that the purchase of the two vehicles is somehow offensive or warrants denial of the relief sought by Ms. Bailey. Indeed, it reflects reality of the situation - better vehicles for dilapidated ones. While it results in monthly car payments of approximately $1,152 a month, according to the IRS, the Local Transportation Expense Standards for this region puts monthly ownership costs for two cars at $1,066 a month.[7] Further, the monthly operating costs for two cars is $586 a month. So, Ms.

---

[7] *See* https://www.justice.gov/ust/eo/bapcpa/20210515/bci_data/IRS_Trans_Exp_Stds_NE.htm

Bailey's current claimed vehicle expenses are well within the national and regional standards and hence, reasonable.

Navient, without support or cross examination of Ms. Bailey, argues that Ms. Bailey's expenses are astronomical.[8] But, nothing in the record supports such a statement and the court cannot find on the evidence presented and/or unchallenged, that the expenses were unreasonable. Indeed, from its own experience, the court believes it would be able to find that the other expenses are below or within the realm of reason of the national standards applicable to the means test in bankruptcy cases.[9] Simply put, Ms. Bailey is underwater every month and would be even if the court discounted the so called "astronomical" expenses. Clearly, an examination of her current financial condition shows by a preponderance of the evidence that payment of the loans would continue to cause Ms. Bailey's standard of living to fall below that minimally necessary to maintain a family of six.

Nevertheless, Navient argues that Ms. Bailey should simply minimize her expenses so she would be able to pay down her loan to Navient. What monthly expenses should be minimized? Navient and the court itself directly examined Ms. Bailey. There were no significant challenges to her testimony, and the court found Ms. Bailey generally credible in her testimony. Navient unsuccessfully tried to impeach Ms. Bailey's testimony and credibility by producing evidence of an impending vow renewal celebration and cruise, but it produced no evidence to challenge Ms. Bailey's testimony that friends and family are paying for those events and/or, she is being comped. As the trier of fact, the court may rely on Ms. Bailey's testimony as evidence and draw reasonable conclusions therefrom. *In re Brightful*, 267 F.3d 324, 330 (3d Cir. 2001); *In re Lynn*, No. BAP ID-13-1218, 2013 WL 6234511, at *4 (B.A.P. 9th Cir. Dec. 2, 2013); *Crawley,* 460 B.R. at 442. Here, the court concludes that Ms. Bailey is telling the truth.

Ms. Bailey has established that currently, she cannot maintain a minimal standard of living at any payment amount and simple belt-tightening would not change this. Thus, the first prong of the *Brunner* test is satisfied.

### B. Prong 2: Additional Circumstances Indicate the Debtor's State of Affairs will Continue for a Significant Portion of the Repayment Period

The second prong of the *Brunner* test requires the debtor to show that "[a]dditional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. It is not enough for Ms. Bailey to show that she is currently in financial distress, but rather she must show "a total incapacity… in the future to pay [her] debts for reasons not within [her] control." *In re Brightful*, 267 F.3d 324, 328 (3d Cir. 2001) (quoting *Faish*, 72 F.3d at 307). "This is a demanding requirement." *Brightful*, 267 F.3d at 328. "In other words, 'dischargeability of student loans should be based upon the certainty of hopelessness, not simply a present inability to fulfill financial

---

[8] *See* TR 12:41:35 p.m.

[9] See https://www.justice.gov/ust/means-testing/20210515

commitment.'" *Id.* (quoting *In re Brunner*, 46 B.R. 752, 755 (S.D.N.Y. 1985)). "These [additional] circumstances need to be detailed and not based on assumptions." *In re Williams*, 296 B.R. 128, 134 (Bankr. D.N.J. 2003); *see also Brightful*, 267 F.3d 324 at 330 (holding that the bankruptcy court could not assume that because the debtor had psychological and emotional problems, she would be prevented from being gainfully employed, because no evidence was presented that showed the debtor's conditions would impair her ability to work).

Ms. Bailey cannot satisfy the second prong of the *Brunner* test. Simply put, she did not meet the demanding requirement of demonstrating a total incapacity in the future to pay her debts for reasons not within her control. While Ms. Bailey testified that her husband lost his job due to medical conditions and has surgery scheduled, and it has been stipulated that her husband has been diagnosed with heart disease, diabetes and hypertension, the fact is, nothing supports a finding that these conditions will persist in preventing repayment of the debt. While other courts in this district have found that medical conditions satisfy the "additional circumstances" under the second prong of the *Brunner* test, the medical condition usually inhibits the debtor's ability to obtain gainful employment. *See In re Jara*, No. 04-47384 RTL, 2006 WL 2806556, at *5 (Bankr. D.N.J. Sept. 27, 2006) (granting student discharge where the debtor had "a chronic, incurable mental health condition (bipolar disorder) that [would] persist" and sporadic employment was the best she could accomplish for the foreseeable future). Here, Ms. Bailey refused to give any further details about her husband's condition, which is her right. *See* TR 10:43:26 a.m. So, the court has no idea how severe the husband's conditions are, whether they will persist, how long will they persist, whether he will be able to work at *any* other job again. The court does not know what the scheduled surgery is for and whether it will prevent gainful employment. The court only has general information of the husband's medical condition and a surgery this summer. In addition, Ms. Bailey also testified that neither she nor her husband have taken significant steps or follow up to secure unemployment, disability payments, or other compensation for her husband.[10] Said payments *could* supplement the household income and possibly allow payments to be made. Likewise, if the husband's medical condition is so detrimental, maybe there is no need for two vehicles. Also, no evidence was provided as to her mother's ability to contribute more to the household income.

Finally, there is insufficient evidence for the court to make any determination on whether the state of affairs is likely to persist for a significant portion of the repayment period of the student loans. There are only six years left on this loan. Certainly, it can be argued that a significant portion of the repayment period on this twenty-year loan has already passed without these current issues, and therefore Ms. Bailey may be out of luck. But more importantly, in line with what the court has already opined, there is no evidence that the current state of affairs is likely to persist for a significant portion of the remaining portion of the repayment period. Either way, the relief sought cannot be had.

All this prevents the court from finding a certainty of hopelessness in the future at this time. Accordingly, the second prong of the *Brunner* test cannot be satisfied, and the loan cannot be discharged as an undue hardship under 11 U.S.C. §523(a)(8) since Ms. Bailey cannot satisfy all three necessary elements under the *Brunner* test at this time.

---

[10] *See* TR 10:42:08 a.m. She testified that they had applied for unemployment and disability but that they had not received any documentation or any determinations from those programs.

### C. Prong 3: Good Faith

Although the court has found that Ms. Bailey has failed to satisfy the second prong of the *Brunner* test, which precludes exception from discharge, a discussion of the third prong is nonetheless appropriate. *See Faish*, 72 F.3d at 306. The third prong of the Brunner test requires the debtor to prove that she made a good faith effort to repay the loans. *Id.* This prong has been thoroughly addressed by the bankruptcy courts in New Jersey. For example, in *In re Rivera,* 284 B.R. 88 (Bankr. D.N.J. 2002), the court found good faith where the debtor had paid for the first year of a ten-year repayment plan, but stopped when mental health issues prevented him from keeping his job. Even in the absence of any payment, some courts have found good faith where the debtor's financial condition was caused by factors beyond the debtor's control. For example, in *In re Williams,* 296 B.R. 128 (Bankr. D.N.J. 2003), the court found good faith even though the debtor did not make a single payment on student loans because of her grave medical condition. In a non-precedential decision, the Third Circuit has stated that it agrees with the approach taken by other Courts of Appeals in that the good faith analysis must consider: "(1) whether the debtor incurred substantial expenses beyond those required to pay for basic necessities and (2) whether the debtor made efforts to restructure his loan before filing his petition in bankruptcy." *Pelliccia v. United States Dep't of Education,* 67 Fed. Appx. 88, 91 (3d Cir. 2003). *See* also *In re Vasilyeva*, No. 07-22164 (KCF), 2008 WL 5954678, at *4 (Bankr. D.N.J. Dec. 12, 2008).

Ms. Bailey does not appear to have incurred substantial expenses beyond those required to pay for basic necessities during the loan repayment period. The record reflects that upon the death of her grandmother in 2011, Ms. Bailey reached out to Navient to find out what was paid on the account, received inaccurate information directly from Navient, sought and received a forbearance for a period of time, and entered some form of loan repayment program with Navient where she made payments she could afford from 2014 until she filed for bankruptcy in 2019.[11] Ms. Bailey also testified, without significant challenge, that she attempted to enter into settlement negotiations with Navient and offered to pay $75 a month for a period of ten years and the offer was rejected. Navient did not provide a counteroffer.[12]

Mr. Andrew Itsede, the litigation specialist for Navient, testified that at this point in time, there is no opportunity for Ms. Bailey to enter into a loan repayment program based upon her current circumstances and that "I believe at this point it is going to be a settlement offer that she can do."[13] This court understands Mr. Itsede's testimony regarding repayment options for Ms. Bailey to mean that apart from a lump sum settlement offer, there are no options for Ms. Bailey to enter into an income-based repayment program with Navient. However, the court finds that the record reflects that Ms. Bailey is not in a position financially to make a lump sum payment to Navient to satisfy the loan at this time, and Mr. Itsede's testimony leads the court to conclude that no income-based repayment plan would be accepted by Navient.

---

[11] *See* TR 11:20:19 a.m. She further testified that near the time she filed for bankruptcy, her payments to Navient were supposed to be around $400 a month and that she could not afford to make those payments.

[12] *See* TR 10:18:28 a.m.

[13] *See* TR 12:25:03 p.m.

Based upon these facts, the court can conclude Ms. Bailey has acted in good faith and thus satisfies the third prong of the *Brunner* test. She attempted to make payments.[14] She has not incurred substantial expenses beyond those required to pay for basic necessities. She has made efforts to restructure the loan years before the filing of her petition in bankruptcy. Indeed, from the testimony provided, it appears that Navient will never enter into an income-based repayment program, and its expectation of a lump sum payment from Ms. Bailey is unrealistic, if not impossible. With this, Ms. Bailey has satisfied the court that she has made a good faith effort, and she can never pay off the loan under the terms demanded by Navient. Ms. Bailey has tried. Seeking to have the debt declared dischargeable is all that remains. Good faith exists.

## CONCLUSION

Because Ms. Bailey failed to meet the second prong of the Brunner test, the loan owed to Navient cannot be discharged as an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

The court notes that should her circumstances change in a way that her loan obligations become an "undue hardship," Ms. Bailey may reopen her bankruptcy case to pursue an undue hardship discharge. *See In re Werner*, No. CIV. 08-00819 (JBS), 2008 WL 5111271, at *3, n.4 (D.N.J. Nov. 21, 2008); *In re Sobh*, 61 B.R. 576, 579 (E.D. Mich. 1986); *see also In re Walker*, 427 B.R. 471, 480 (B.A.P. 8th Cir. 2010), *aff'd*, 650 F.3d 1227 (8th Cir. 2011). However, the court cautions Ms. Bailey that her circumstances must change from her current financial condition. Her failure to produce evidence during trial to support her current claim based upon her current financial condition, prevents and/or estops her from seeking a hardship discharge on the same set of facts and circumstances.

An appropriate judgment has been entered consistent with this decision.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: June 30, 2021

---

[14] Candidly, the court is at a loss as to whether payments were made before the grandmother died in 2011. Ms. Bailey has no idea, and the court is not persuaded by Mr. Itsede's testimony or documentary evidence produced. Certainly, a conflicting accounting letter provided by Navient sheds some doubt. But since both parties testified that once Ms. Bailey became solely responsible for the debt, she obtained a forbearance and then started making payments, there is evidence of good faith efforts to make payments.